Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 9:23-cv-81045 |
| Plaintiff, | **STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, CIVIL PENALTY JUDGMENT, AND OTHER RELIEF** |
| v. | |
| FLUENT, LLC; | |
| REWARDZONE USA LLC, also d/b/a Up Rewards, The Reward Genius, Flash Rewards, and National Consumer Center; | |
| DELIVER TECHNOLOGY LLC, also d/b/a Flash Rewards; | |
| SEARCH WORKS MEDIA, LLC, also d/b/a FindDreamJobs and StartACareerToday; and | |
| EASE WINS, LLC, also d/b/a JobsOnDemand; Defendants. | |

Plaintiff, the United States of America, acting upon notification and authorization to the

Attorney General by the Federal Trade Commission ("Commission" or "FTC"), filed its

Complaint for Permanent Injunction, Monetary Relief, Civil Penalties, and Other Relief

("Complaint"), for a permanent injunction, monetary relief, civil penalties, and other relief in this

matter, pursuant to Sections 5(a), 5(m)(1)(A), 13(b), 16(a), and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, Section 6

of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"),

15 U.S.C. § 6105, and Section 7(a) of the Controlling the Assault of Non-Solicited Pornography

and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. § 7706(a). Defendants have waived

service of the summons and the Complaint.  Plaintiff and Defendants stipulate to the entry of this

Stipulated Order for Permanent Injunction, Monetary Relief, Civil Penalty Judgment, and Other Relief ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. §§ 7701–7713, and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, as amended, in connection with its acquiring of consumer data using ads and websites purportedly offering consumers job opportunities or "free" Rewards, such as a $1,000 Walmart gift card or $750 deposit on a mobile app like Venmo, and its selling of the consumer leads to third parties.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for the purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants and Plaintiff waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      "**Affirmative Express Consent**" means, upon being presented with a clear choice to

provide or withhold consent, an affirmative act taken by a consumer communicating specific, informed, and unambiguous authorization to collection and sale, transfer, or disclosure of Covered Information.

The following does not constitute Affirmative Express Consent:

1. A consumer's authorization inferred from the hovering over, muting, pausing, or closing of a given piece of content by the consumer; or

2. A consumer's authorization obtained through a user interface that has the substantial effect of subverting or impairing user autonomy, decision-making, or choice.

B. **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to

easily hear and understand it.

4.　　In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.　　The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.　　The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.　　The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.　　When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

C.　　"**Commercial Email Message**" means any email message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including the content on an Internet website operated for a commercial purpose).

D.　　"**Covered Information**" means individually identifiable information from or about an individual consumer, including (a) first and last name; (b) a home or other physical address, including street name, name of city or town, or zip code; (c) an email address or other online contact information, such as a social media username; (d) a telephone number, including mobile number; (e) gender; (f) age or date of birth; (g) response to any survey or multiple-choice question about circumstances specific to the consumer, such as

4

education level, employment status, or household debt; (h) biometric information; or (i) any information combined with any of (a) through (h). Exempt from the definition of Covered Information is any information identified in (a) through (d) of this definition that Defendants use exclusively to initiate or complete, on behalf of a consumer, a transaction with a seller of goods or services that Defendants advertise, market, or promote.

E.     "**Defendants**" means Fluent, LLC, RewardZone USA LLC, Deliver Technology LLC, Search Works Media, LLC, Ease Wins, LLC, and their successors and assigns.

F.     "**Established Business Relationship**" means a relationship between a Seller and a Person based on: (a) the Person's purchase, rental, or lease of the Seller's goods or services or a financial transaction between the Person and Seller, within the 18 months immediately preceding the date of the Telemarketing call; or (b) the Person's inquiry or application regarding a product or service offered by the Seller, within the 3 months immediately preceding the date of a Telemarketing call.

G.     "**Header Information**" means the source, destination, and routing information attached to a Commercial Email Message, including the originating domain name and originating email address, and any other information that appears in the line identifying, or purporting to identify, a Person initiating or Procuring the message.

H.     "**Lead Generation**" means (a) using marketing techniques, including Publisher Programs, to identify or attract prospective customers' interest in a third party's product or service; (b) obtaining, or assisting others in obtaining, Covered Information of prospective customers for a third-party's product or service; or (c) providing any such Covered Information of prospective customers to a third party.

I.     "**National Do Not Call Registry**" means the National Do Not Call Registry, which is the

"do-not-call" registry maintained by the Commission pursuant to 16 C.F.R.

§ 310.4(b)(1)(iii)(B).

J.    "**Outbound Telephone Call**" means a telephone call initiated by a Telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

K.    "**Person**" or "**Persons**" includes a natural person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

L.    "**Procure,**" "**Procurement**," or "**Procuring**" when used with respect to a Commercial Email Message, means to pay or provide other consideration to, or induce, another Person to initiate such a message on one's behalf.

M.    "**Publisher**" means any Person who participates in a Publisher Program.

N.    "**Publisher Program**" means any arrangement under which any Defendant pays, offers to pay, or provides or offers to provide any form of consideration for (i) provision or referral—either directly or through a Publisher Network—of potential or actual consumers to Defendants or (ii) advertising, marketing, promotion, or offering for sale any of Defendants' goods or services.

O.    "**Publisher Network**" means any Person who (i) any Defendant pays, offers to pay, or provides or offers to provide any form of consideration for participation in a Publisher Program; and (ii) pays any other Person to participate in a Publisher Program.

P.    "**Publisher Source**" means any Person who performs services for a Publisher Network.

Q.    "**Reward**" means anything of value offered to consumers, including a gift card, check, cash-value deposit on a mobile payment application or other cash equivalents, a mobile device, or any other good in exchange for completing tasks, disclosing personal

information, making purchases, or taking other actions.

R.     "**Seller**" means any Person who, in connection with a Telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration whether or not such Person is under the jurisdiction of the Commission

S.     "**Telemarketer**" means any Person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor, whether or not such person is under the jurisdiction of the Commission.

T.     "**Telemarketing**" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones, and which involves a telephone call.

## I.     RESTRICTIONS ON COLLECTION OF COVERED INFORMATION ON EMPLOYMENT SITES

IT IS ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from, in connection with any website or mobile application related to employment or potential employment:

A.     Failing to Clearly and Conspicuously provide the following disclosure or one that is materially the same, in a manner that is visible without scrolling: "This site may provide a list of third-party job postings and is not affiliated with any employer. You may be transferred to a third-party website to apply for a specific job."

B.     Collecting any Covered Information other than a consumer's first name, last name, zip code, email address, and any responses to survey or multiple-choice questions related to

employment (hereinafter "Employment Covered Information"), *provided, however* that, so long as they comply with the requirements of Section VIII of this Order applicable to collection of Covered Information, Defendants may also collect the following, which do not qualify as "Employment Covered Information" under this Section:

1. For the sole purpose of notifying the consumer via text message regarding employment or potential employment, a consumer's mobile phone number; and

2. Covered Information collected only for the purposes of (a) preparing a resume or (b) preparing and submitting to a prospective employer a job application on the consumer's behalf;

C. Selling, transferring, or disclosing to any Person other than another Defendant a consumer's mobile phone number collected under Subsection B(1) of this Order, *provided, however* that such phone numbers may be disclosed to a service provider that (1) a Defendant pays to text message consumers on its behalf for the sole purpose of notifying the consumer regarding employment or potential employment, and (2) does not pay or receive payment as consideration for the mobile phone number received from Defendants;

D. Failing, prior to collecting any Employment Covered Information, to Clearly and Conspicuously disclose: "Sharing your personal information is optional.";

E. Failing to provide consumers with a Clear and Conspicuous means of accessing information related to employment or potential employment without disclosing Employment Covered Information;

F.     Selling, transferring, or disclosing Employment Covered Information without complying with the requirements of Section VIII of this Order applicable to collection and sale, transfer, or disclosure of Covered Information;

G.     Selling, transferring, or disclosing Employment Covered Information for any purpose other than emailing the consumer with information regarding employment, potential employment or employment-related services;

H.     Selling, transferring, disclosing, or otherwise using any Employment Covered Information to populate or fill out forms on any third-party website;

I.     Selling, transferring, or disclosing information collected under Subsection B(2) of this Order without complying with the requirements of Section VIII of this Order applicable to collection and sale, transfer, or disclosure of Covered Information;

J.     Selling, transferring, or disclosing the information collected under Subsection B(2) of this Order to any Person other than the consumer who provided the information or, with the consumer's Affimative Express Consent, to a prospective employer in connection with a specific job vacancy;

K.     Transferring consumers to any third-party website without first disclosing that the consumer is being transferred to such a site; and

L.     Advertising, marketing, or promoting any Reward or opportunity to pursue or qualify for a Reward.

## II.     PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with Lead

Generation, or the advertising, marketing, or promotion of any Reward or service are permanently restrained and enjoined from:

A.      Misrepresenting or assisting others in misrepresenting, expressly or by implication:

  1.      That any consumer has won or been specially selected to receive a Reward;

  2.      That consumers will receive a Reward in exchange for providing personal information, without any other cost or obligation;

  3.      That consumers will receive a Reward in exchange for completing a survey, without any other cost or obligation;

  4.      That any specific Reward offered by Defendants is available only for short period of time or in a limited quantity;

  5.      That Defendants or Publishers acting on their behalf are, represent, or are affiliated with, any third party businesses;

  6.      The monetary obligations a consumer is likely to incur to obtain a Reward;

  7.      The amount of time in which a consumer will receive a Reward;

  8.      The need for promptness or urgency in responding to any advertising, marketing, or promotion of a Reward;

  9.      Any other fact material to consumers concerning any Reward such as: the total costs; any material restrictions, limitations, or conditions; or any aspect of the benefits, nature, or central characteristics of any Reward.

  10.     That any consumer has been specially selected to apply or schedule an interview for a job with a specific employer;

  11.     That any employment opportunity is guaranteed;

  12.     That Defendants or a Publisher or Publisher Source acting on their behalf are,

represent, or are affiliated with any specific employer hiring to fill an open job position;

13. That the opportunity to qualify for any Reward is an employment opportunity;

14. Any other fact material to consumers concerning any employment opportunity;

15. The purposes for which Defendants are collecting Covered Information;

16. Whether Covered Information will be sold or shared with third parties;

17. The ways in which third parties will use Covered Information obtained from Defendants;

B. Failing to disclose, Clearly and Conspicuously, the material terms and conditions of obtaining a Reward, including:

1. In any advertisement and on any website or mobile application that represents, directly or indirectly, expressly or by implication, that consumers can earn, qualify for, or receive a Reward from Defendants, that to qualify for a Reward, a consumer will incur monetary obligations;

2. On any website or mobile application that represents, directly or indirectly, expressly or by implication, that consumers can earn, qualify for, or receive a Reward from Defendants:

   a. All non-monetary obligations a consumer is likely to incur to obtain a Reward, such as disclosure of Covered Information, completion of survey questions, or consent to Commercial Email Messages or commercial text messages;

   b. The total monetary cost incurred by consumers, on average, who succeed in qualifying for a Reward of the same or similar value to the Reward

advertised, marketed, promoted, or offered to the consumer, *provided, however* that a disclosure that includes (1) the average costs incurred by consumers who succeeded in qualifying for the highest value Reward offered and (2) the average costs incurred by consumers who succeeded in qualifying for a Reward of a value that is no less than half that of the highest value Reward offered shall be sufficient for purposes of compliance with this paragraph;

c.   The amount of time permitted to complete deals required to qualify for a Reward;

d.   The average number of days between a consumer's registration and issuance to consumers of a Reward of the same or similar value to the Reward advertised, marketed, promoted, or offered to the consumer; or

e.   The percentage of consumers, in the past year, who received from Defendants the highest value Reward offered, out of the total number of consumers who registered with Defendants in connection with such a Reward.

C.   In connection with Rewards offered by any Defendant, failing to establish, implement, and maintain a system that includes procedures sufficient to:

1.   Require third parties who offer a deal or other transaction that a consumer may complete to qualify for a Reward to report to Defendants a consumer's completion of any such deal or transaction within one business day of completion;

2.   Ensure that, within 12 hours of receipt of a report of completion under Subsection C(1) of this Section, any consumer account or profile that tracks consumer

qualification for a Reward reflects the completion of that deal or transaction;  or

3.    A Reward is delivered to a consumer within 10 business days of the consumer's

completion of all requirements for obtaining such Reward, or, if the promotion or

offer of the Reward specified a time within which the Reward will likely be

delivered, ensure that it is delivered within the specified time.

### III.   PROHIBITION AGAINST COMMERCIAL EMAIL MESSAGES THAT ARE UNSOLICITED, UNAUTHORIZED, OR DECEPTIVE

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from violating Sections 5 and 6 of the CAN-SPAM Act, 15 U.S.C. §§ 7704 and 7705, including but not limited to initiating, Procuring, or transmitting or assisting others in initiating, Procuring, or transmitting a Commercial Email Message that:

A.    Contains, or is accompanied by, materially false or misleading Header Information,

including but not limited to a "from" line (the line identifying or purporting to identify

the Person initiating or Procuring the message) that does not accurately identify any

Person who initiated or Procured the Commercial Email Message;

B.    Contains a subject heading likely to mislead an authorized user of the email address to

which a Commercial Email Message was sent or delivered, acting reasonably under the

circumstances, about a material fact regarding the contents or subject matter of the

message.

C.    Does not include a Clear and Conspicuous notice of the opportunity to decline to receive

further Commercial Email Messages from the sender, Defendants, or any other sender on

13

Defendants' behalf, or describe the means by which such a request to decline can be made;

D.    Does not include a functioning return email address or other Internet-based mechanism, Clearly and Conspicuously displayed, that can be used to submit a request not to receive, at the email address where the Commercial Email Message was received, future Commercial Email Messages from the sender, Defendants, or any other sender on Defendants' behalf, and that remains capable of receiving such requests for no less than 30 days after the transmission of the Commercial Email Message; or

E.    Is sent to an email address more than 10 days after the sender receives a request from an authorized user of the email address not to receive future Commercial Email Messages from the sender, any Defendant, or any other sender on Defendants' behalf.

## IV.    DUE DILIGENCE AND MONITORING OF PUBLISHERS AND PUBLISHER NETWORKS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from failing to:

A.    Provide to each Publisher or Publisher Network, as a condition of doing business, a copy of this Order within 7 days of its entry and a Clear and Conspicuous disclosure in writing that engaging in acts or practices prohibited by this Order will result in disciplinary action, which may include immediate termination of any Publisher, Publisher Network, or Publisher Source and forfeiture of all monies owed to such Publisher or Publisher Network;

B.    Obtain, within 45 days of entry of this Order, a signed and dated statement from each

14

Publisher and Publisher Network acknowledging receipt of the Order and expressly agreeing to comply with it, or suspend, until such a statement is provided, all business with any Publisher or Publisher Network that fails to provide it;

C.   Establish, implement, and thereafter maintain a system to review and monitor all materially distinct materials that any Publisher or Publisher Network publicly displays or disseminates to any consumers who are referred to Defendants, which system shall include procedures sufficient to:

1.   Require each Publisher or Publisher Network, prior to participation in any Publisher Program, to provide the following identifying information:

    a.   In the case of a natural Person, the Publisher's or Publisher Network's first and last name, any and all names under which the Publisher or Publisher Network does business, physical address, country, telephone number, email address, and bank account information (including only the last four digits of bank account number) necessary to identify where payments are to be made to that Person;

    b.   In the case of a business entity, the Publisher's or Publisher Network's name, any and all names under which it does business, state of incorporation, registered agent, and the first and last name, physical address, country, telephone number, and email address for at least one natural Person who owns, manages, or controls the Publisher or Publisher Network, and the complete bank account information as to where payments are to be made to the Publisher or Publisher Network;

2.   Obtain from each Publisher or Publisher Network:

a.   A copy of all materially distinct material, including text, graphic, video, audio, and photographs—prior to public display or dissemination to consumers—that a Publisher or Publisher Network used to advertise, promote, market, or offer for sale any of Defendants' goods or services;

b.   Each website or social media location where the material has appeared that the Publisher or Publisher Network maintains or controls,  including any social media account or URL of any website;

c.   Each ad platform, such as Google Ads or Meta's Self-Serve Ads, to which the Publisher or Publisher Network submitted the material to be served to consumers and the dates corresponding to the time period over which it was served;

d.   The URL for any hyperlinks contained within the material; and

e.   Dates when the material was publicly displayed or disseminated to any consumer;

3.   Review all material submitted to Defendants under Subsections C(1) and (2) of this Section to determine if it complies with the requirements of this Order and Defendants' policies and guidelines for Publishers, and:

a.   If the material does not comply, inform the Publisher or Publisher Network in writing that approval to use such material is denied; and

b.   If the material does comply, inform the Publisher or Publisher Network in writing that approval to use such material is granted;

4.   If Defendants know or should know that the Publisher or Publisher Source has:

a.   Publicly displayed or disseminated to a consumer any material that

16

contains a misrepresentation prohibited by this Order or otherwise does not comply with this Order; or

b.     Emailed any consumer on Defendants' behalf without downloading, at least ten days prior to sending any such email, a suppression list maintained by Defendants that contains all requests to unsubscribe from emails advertising, marketing, promoting, or offering for sale any of Defendants' goods or services,

Then Defendants shall, subject to Subsection C(6) of this Section, immediately suspend, deny payment to, and reject all future consumers referrals from such Publisher or Publisher Source;

5.     Promptly and thoroughly investigate any complaint or other information that Defendants receive alleging that a Publisher, Publisher Network, or Publisher Source is engaging in acts or practices prohibited by this Order, and:

a.     Notify the Publisher, Publisher Network, or Publisher Source that it is under investigation;

b.     At the conclusion of the investigation,

   i.     Document the factual findings and conclusions in a written report;

   ii.    Send the written report to the Publisher, Publisher Network, or Publisher Source investigated; and

   iii.   If the Publisher, Publisher Network, or Publisher Source is found to have engaged in acts or practices prohibited by this Order, immediately suspend or permanently terminate the Publisher, Publisher Network, or Publisher Source including by rejecting all

future consumer referrals;

6.     Require, prior to allowing any Publisher, Publisher Network, or Publisher Source that has been suspended to participate in a Publisher Program again, compliance with the requirements of Subsections C(1)–(3) of this Section; and

7.     Permanently terminate any Publisher, Publisher Network, or Publisher Source that Defendants have suspended on at least two prior occasions and that subsequently engages in acts or practices prohibited by this Order.

D.     Contractually require, for any Publisher Source to which Defendants only have access through a Publisher Network, that the Publisher Network:

1.     Provide to each such Publisher Source a copy of this Order and a Clear and Conspicuous disclosure in writing that engaging in acts or practices prohibited by this Order will result in disciplinary action, which may include immediate termination of any Publisher Source and forfeiture of all monies owed to such Publisher Source;

2.     Retain proof of the same prior to any such Publisher Source's participation in a Publisher Program;

3.     Obtain from each such Publisher Source the information set forth in Subsections D(1) and (2) of this Section, prior to the Publisher Source or Publisher Network's participation in any Publisher Program;

4.     Conduct review of all materially distinct materials, including text, graphic, video, audio, and photographs—prior to public display or dissemination—that each such Publisher Source will use to advertise, promote, market, or offer for sale any of Defendants' goods or services to determine if it complies with the requirements of

18

this Order and Defendants' policies and guidelines for Publishers, and:

    a.    If the material does not comply, inform the Publisher Source in writing that approval to use such material is denied;

    b.    If the material does comply, inform the Publisher Source in writing that approval to use such material is granted;

5.    Provide, upon request by any Defendant:

    a.    Any information the Publisher Network was required to obtain under Subsection D(3) of this Section; and

    b.    Any approval or denial required under Subsection D(4) of this Section; and

E.    Designate, within 30 days of entry of this Order, an employee responsible for the establishment, implementation, and maintenance of the system required under Subsection IV(C).

## V.    MONITORING OF INTERNAL ADVERTISEMENTS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from disseminating any material, including text, graphic, video, audio, and photographs to advertise, promote, market, or offer for sale any goods or services, without first:

A.    Establishing, implementing, and thereafter maintaining a system to review and monitor all materially distinct materials, which system shall include procedures sufficient to:

1.    Review the following to determine compliance with the requirements of this

Order and Defendants' advertising policies and guidelines:

a.     A copy of any materially distinct material;

b.     Each website or social media location where the material will appear that any Defendant maintains, or directly or indirectly controls, , including any social media account or URL of any website;

c.     Each ad platform, such as Google Ads or Meta's Self-Serve Ads, to which the material has been submitted to be served to consumers and the dates corresponding to the time period over which it will be served;

d.     The URL for any hyperlinks contained within the material; and

e.     The landing page associated with any URL contained within the material; and

2.     Document in writing that the review set forth in Subsection V(A) resulted in a determination of compliance with the requirements of this Order and Defendants' advertising guidelines and policies; and

B.     Designating an employee responsible for the establishment, implementation, and maintenance of the system required under Subsection V(A).

## VI.     BAN ON ROBOCALLS

IT IS ORDERED that Defendants, whether acting directly or through an intermediary, are permanently restrained and enjoined from initiating, causing others to initiate, or assisting others in initiating any Outbound Telephone Call that plays or delivers a prerecorded message.

## VII.    PROHIBITION ON CALLS TO NUMBERS ON THE NATIONAL DO NOT CALL REGISTRY

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from engaging in, or assisting and facilitating others in engaging in, any of the following practices:

A.   Initiating any Outbound Telephone Call to any person at a telephone number on the National Do Not Call Registry unless the Seller or Telemarketer proves that:

    1.   The Seller has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of that Seller may be placed to that person, and shall include the telephone number to which the calls may be placed and the electronic or other signature of that person. Such written agreement shall fully disclose the identity of the Seller and must be obtained prior to the Seller or Telemarketer placing a call to a telephone number on the National Do Not Call Registry; or

    2.   The Seller has an Established Business Relationship with such person, and that person has not stated that he or she does not wish to receive Outbound Telephone Calls made by or on behalf of the Seller.

### VIII.   REQUIREMENTS RELATED TO THE SALE, TRANSFER, OR DISCLOSURE OF COVERED INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.   Collecting and selling, transferring, or otherwise disclosing any consumer's Covered

Information to any Person—other than another Defendant or a service provider of Defendants that does not pay or receive payment as consideration for the Covered Information it receives from Defendants—unless Defendants have:

1.  Clearly and Conspicuously disclosed to the consumer, separate and apart from any "privacy policy," "terms and conditions," "terms of service," or other similar document and without requiring the consumer to click a hyperlink or take any other affirmative act to view or access the disclosure:

    a.  The specific purpose(s) for which the Covered Information may be collected, sold, transferred, or disclosed;

    b.  The types of Covered Information that may be sold, transferred, or disclosed;

    c.  The name of every Person who collects the Covered Information, where the name disclosed must be that of a natural person, legal entity, or registered DBA;

    d.  The name of every Person to whom the Covered Information will be sold, transferred, or disclosed, where the name disclosed must be that of a natural person, legal entity, or registered DBA;

    e.  All purposes for which Defendants and each recipient will use the Covered Information;

    f.  A simple, easily located means for the consumer to withdraw authorization to the sale, transfer, or distribution of the consumer's Covered Information;

    g.  Any limitations on the consumer's ability to withdraw authorization to the

sale, transfer, or distribution of the consumer's Covered Information; and

h.      All other information material to the provision of authorization to collection, sale, transfer, or distribution of the consumer's Covered Information;

2.      Obtained, following the complete disclosure of all information set forth in Subsection A(1) of this Section,  the consumer's Affirmative Express Consent to the collection and sale, transfer, or disclosure of the consumer's Covered Information; and

3.      Obtained signed and dated contract documents or a certification from the recipient of the Covered Information stating:

a.      The name and nature of the recipient's business(es), including the purpose(s) for obtaining consumers' Covered Information;

b.      The recipient's physical address(es) for conducting business;

c.      All of the recipient's relevant registered trade name(s), alter egos, DBA names, fictitious names, or aliases under which the recipient conducts or has conducted business;

d.      Confirmation that the recipient possesses all relevant required businesses licenses, and business registrations;

e.      A description of the recipient's business, including describing the nature of goods or services sold and the nature of sale:

f.      That Covered Information will not be sold, transferred, or disclosed to any other Person or used for any purpose other than the specific purpose(s) stated in the required disclosure under Subsection A(1) of this Section;

g.      The identity of each Person with whom the recipient will share the Covered Information and all purposes for which each Person will use the Covered Information obtained from the recipient; and

h.      Affirmation that the Covered Information for any consumer will be permanently destroyed within 2 weeks of notice from Defendants that the consumer has requested it be deleted or has retracted consent to its use, *provided, however,* that Covered Information need not be destroyed to the extent requested by a government agency or as required by law, regulation, or court order; or

B.      Taking any action to encourage, compel, or mislead any consumer to provide Affirmative Express Consent, including

1.      Requiring Affirmative Express Consent as a condition of use of the services on any website or app owned or operated by Defendants or the opportunity to make a purchase or  earn or qualify for any Reward; or

2.      Obtaining Affirmative Express Consent through a user interface that fails to provide a clear option to proceed without providing consent.

## IX.    MONETARY JUDGMENT FOR CIVIL PENALTY

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of two million five hundred thousand Dollars ($2,500,000) is entered in favor of Plaintiff against Defendants, as a civil penalty.

B.      Defendants are ordered to pay to Plaintiff, by making payment to the Treasurer of the United States, two million five hundred thousand Dollars ($2,500,000), which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than

payment to Plaintiff. Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of Plaintiff.

## X.    ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.    Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.    The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.    The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.    Defendants agree that the civil penalty judgment represents a civil penalty owed to the government of the United States and is not compensation for actual pecuniary loss.

E.    Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

## XI.    CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who

receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.      Within 100 days after receipt of written direction to do so from a representative of the Commission, failing to destroy Covered Information in all forms, including the name, address, phone number, email address, gender, date of birth, survey question responses, and any information derived from Covered Information, including aggregate, anonymized data, that are in any Defendant's possession, custody, or control and was obtained prior to  the date on which all Defendants have signed this Order in connection with the advertising, marketing, or promotion of any Reward or employment opportunities, *provided, however*, that a customer's information need not be deleted to the extent:

1.      Requested by a government agency;

2.      Required by law, regulation, court order, contractual obligations requiring Defendants to maintain records on behalf of entities that buy Covered Information to document compliance with federal or state laws or regulations applicable to Telemarketing or email marketing, or legal process, including as required by rules applicable to safeguarding of evidence in pending or anticipated litigation;

3.      Required for compliance with Subsection II(B)(2) of this Order; or

4.      The Covered Information is necessary for customer service, customer experience, analytics, or fraud prevention purposes related to Rewards, including tracking any consumer's Reward qualification activity or delivering a Reward to a consumer;

B.      Selling or otherwise benefitting from the transfer or disclosure of any Covered Information and any information derived from such Covered Information, including

26

aggregate, anonymized data that was not deleted pursuant to Subsection A of this Section;

C.     Within 90 days after the effective date of this Order, failing to:

1.     Identify each Person who, in connection with Telemarketing, has accessed, received, or acquired a consumer's Covered Information from any Defendant, prior to the date on which all Defendants have signed this Order;

2.     Identify what types of Covered Information was disclosed to each Person identified in Subsection C(1) of this Section; or

3.     Submit a list of the information identified in Subsections C(1)–(2) of this Section and a description of the methodologies used to identify that information to: DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: "In re Fluent, Inc., [X-number]";

D.     Within 90 days after the effective date of this Order, failing to:

1.     Provide a copy of the Complaint and Order to all Persons identified under Subsection (C)(1) of this Section;

2.     Notify each such Person in writing that the Federal Trade Commission alleges that Defendants collected Covered Information of consumers, in a manner that was deceptive and in violation of the FTC Act and TSR, and transferred the information to such Person;

3.     Instruct each such Person in writing that all Covered Information accessed, received, or acquired from any Defendant prior to the date on which all

Defendants have signed this Order must be permanently destroyed, and that Covered Information need not be destroyed only to the extent requested by a government agency or as required by law, regulation, or court order, or to the extent there is an Established Business Relationship with the consumers that are the subject of the Covered Information and the Covered Information is necessary to prove the existence of an Established Business Relationship, where such instruction shall include a list of the Covered Information identified in Subsection C(2) of this Section and demand written confirmation that the Person has complied with the requirements of Subsection D(3) of this Section;

4.      Provide a copy of the instructions sent under Subsection D(3) of this Section to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: "In re Fluent, Inc., [X-number]"; or

5.      Provide, within 5 days of receipt, each written confirmation under Subsection D(3) of this Section to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: "In re Fluent, Inc., [X-number]"; or

E.      Selling, transferring, or disclosing Covered Information to any Person identified in Subsection C(1) of this Section unless Defendants have first:

1.      Confirmed the Person's receipt of the instructions provided under Subsection

D(3);

2.     Received from the Person a written confirmation of compliance with those

instructions; and

3.     Complied with Section VIII of this Order.

## XII.    COOPERATION

IT IS FURTHER ORDERED that Defendants must fully cooperate with representatives

of Plaintiff and the Commission in this case and in any investigation related to or associated with

the transactions or the occurrences that are the subject of the Complaint. Defendants must

provide truthful and complete information, evidence, and testimony. Defendants "must cause

Defendants' officers, employees, representatives, or agents to appear" for interviews, discovery,

hearings, trials, and any other proceedings that a Plaintiff or Commission representative may

reasonably request upon 5 days written notice, or other reasonable notice, at such places and

times as a Plaintiff or Commission representative may designate, without the service of a

subpoena.

## XIII.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this

Order:

A.     Each Defendant, within 7 days of entry of this Order, must submit to the Commission an

acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 20 years after entry of this Order, each Defendant must deliver a copy of this Order

to: (1) all principals, officers, directors, and LLC managers and members; (2) all

employees having managerial responsibilities for conduct related to the subject matter of

the Order and all agents and representatives who participate in conduct related to the

subject matter of the Order; and (3) any business entity resulting from any change in

29

structure as set forth in the Section titled Compliance Reporting. Delivery must occur

within 7 days of entry of this Order for current personnel. For all others, delivery must

occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that

Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of

this Order.

### XIV.   COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the

Commission:

A.      One year after entry of this Order, each Defendant must submit a compliance report,

sworn under penalty of perjury that:

1.      Identifies the primary physical, postal, and email address and telephone number,

as designated points of contact, which representatives of the Commission and

Plaintiff may use to communicate with Defendant;

2.      Identifies all of that Defendant's businesses by all of their names, telephone

numbers, and physical, postal, email, and Internet addresses;

3.      Describes the activities of each business, including the goods and services

offered, the means of advertising, marketing, and sales, and the involvement of

any other Defendant;

4.      Describes in detail whether and how that Defendant is in compliance with each

Section of this Order; and

5.      Provides a copy of each Order Acknowledgment obtained pursuant to this Order,

unless previously submitted to the Commission.

B.     For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

    1.     Any designated point of contact; or

    2.     The structure of any Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580. The subject line must begin:  FTC v. Fluent, LLC, Matter No. 1923230.

## XV.    RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendants must create and retain the following records:

A.    Accounting records showing the revenues from all goods or services sold;

B.    Personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    Records of all consumer complaints, whether received directly or indirectly, such as through a third party, and any response;

D.    All requests to any Defendant not to receive future Commercial Email Messages;

E.    All statements from Publishers provided under Subsection IV(B);

F.    All information and materials provided by any Publisher or Publisher Network as required under Subsection IV(C)(1)–(2);

G.    All written grants or denials of approval issued under Subsection IV(C)(3);

H.    All written reports prepared under Subsection IV(C)(5)(b);

I.    All information obtained pursuant to a request as set forth in Subsection IV(D)(5);

J.    All materials and information reviewed under Subsection V(A)(1);

K.    All written determinations of compliance issued under Subsection V(A)(2);

L.    All documents reflecting Affirmative Express Consent collected as required under Sections I and VIII, including:

    1.    The name and telephone number of the person providing Affirmative Express Consent;

2.    A copy of the request for Affirmative Express Consent, including all required disclosures under Subsection VIII(A)(1), recorded in the same manner and format in which it was presented to the person providing it;

3.    The purpose for which Affirmative Express Consent was requested and obtained;

4.    A copy of the Affirmative Express Consent as it appeared to the person that provided consent at the time it was provided;

5.    The date that the Affirmative Express Consent was obtained; and

6.    All information showing compliance with requirements for Affirmative Express Consent, as defined in this Order;

M.    All certifications and contract documents obtained as required under Subsection VIII(A)(3);

N.    All written confirmations obtained under Subsection XI(D)(3);

O.    All records of any market, behavioral, or psychological research, or user, customer, or usability testing, including any A/B or multivariate testing, copy testing, surveys, focus groups, interviews, clickstream analysis, eye or mouse tracking studies, heat maps, or session replays or recordings concerning the subject matter of this Order; and

P.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission.

## XVI.    COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order and any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the Plaintiff, each Defendant must: submit additional compliance reports or other requested information,

which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission and Plaintiff are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission and Plaintiff are authorized to communicate directly with each Defendant. Defendant must permit representatives of the Commission and Plaintiff to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission and Plaintiff may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

**SO ORDERED this ___ day of _____, 202__.**

_____
UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

**THE UNITED STATES OF AMERICA**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General, Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director, Consumer Protection Branch

RACHAEL L. DOUD
Assistant Director, Consumer Protection Branch

/s/ Zachary L. Cowan                        Date:  7/17/2023
ZACHARY L. COWAN (NCBN 53432)
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
450 5th Street, N.W.
Washington, DC 20530
(202) 353-7728
Zachary.L.Cowan@usdoj.gov


**FEDERAL TRADE COMMISSION**

Date:  6/20/2023

Purba Mukerjee
James Davis
Federal Trade Commission
230 S. Dearborn St., Suite 3030
Chicago, IL 60604
(202) 527-8251
pmukerjee@ftc.gov
jdavis@ftc.gov

**FOR DEFENDANTS:**

Date: MAY 26, 2023

Daniel Savrin
David Monteiro
Caiti Zeytoonian
Morgan, Lewis & Bockius LLP
1 Federal Street
Boston, MA 02110-01726
(617) 951-8674
daniel.savrin@morganlewis.com
david.monteiro@morganlewis.com
caiti.zeytoonian@morganlewis.com
COUNSEL for Fluent, LLC, RewardZone USA LLC, Deliver Technology LLC, Search Works Media, LLC, and Ease Wins, LLC

**DEFENDANTS:**

Date: 5/26/2023

Donald Patrick, as Chief Executive Officer of
Fluent, LLC, RewardZone USA LLC,
Deliver Technology LLC,
Search Works Media, LLC, and Ease Wins, LLC